UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC., a Delaware
corporation,

        Plaintiff,

                              Case No. 06-CV-10801

vs.                               HON. GEORGE CARAM STEEH

PINSTRIPE, INC., a Wisconsin
corporation, DOUGLAS E. LUBIN, an
individual, and ANNE STAMM,
an individual,

        Defendants.
_____/

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR AN
ORDER GRANTING LEAVE TO TAKE EXPEDITED DISCOVERY

INTRODUCTION

This matter was recently reassigned from Judge Gadola to this court as a companion case to this court's closed case # 05-70526. Pending in the case is plaintiff's motion for a temporary restraining order (TRO) and preliminary injunction, concerning which Judge Gadola held oral argument but did not issue an order. The court has received the transcript from the hearing held by Judge Gadola, and finds another hearing to make a decision on the motion for TRO is unnecessary. For the reasons stated in the discussion below, plaintiff's motion for TRO is denied. Plaintiff's motion for an order granting leave to take expedited discovery is granted in part and denied in part, as discussed below.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC., a Delaware
corporation,

        Plaintiff,

                              Case No. 06-CV-10801

vs.                                    HON. GEORGE CARAM STEEH

PINSTRIPE, INC., a Wisconsin
corporation, DOUGLAS E. LUBIN, an
individual, and ANNE STAMM,
an individual,

        Defendants.
_____/

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR AN
ORDER GRANTING LEAVE TO TAKE EXPEDITED DISCOVERY

INTRODUCTION

This matter was recently reassigned from Judge Gadola to this court as a companion case to this court's closed case # 05-70526. Pending in the case is plaintiff's motion for a temporary restraining order (TRO) and preliminary injunction, concerning which Judge Gadola held oral argument but did not issue an order. The court has received the transcript from the hearing held by Judge Gadola, and finds another hearing to make a decision on the motion for TRO is unnecessary. For the reasons stated in the discussion below, plaintiff's motion for TRO is denied. Plaintiff's motion for an order granting leave to take expedited discovery is granted in part and denied in part, as discussed below.

BACKGROUND

This case stems from the departure of employees Douglas Lubin and Anne Stamm from plaintiff Kelly Services, Inc. ("Kelly"), specifically its business line called "HRFirst Services ("HRFirst")," and their subsequent employment with defendant Pinstripe, Inc., which plaintiff alleges is a Kelly competitor located in Milwaukee, Wisconsin.

Kelly asserts four counts in its complaint. In Count I, Kelly claims breach of contract against its former employees for violation of non-competition agreements; Count II asserts violations of the Michigan Uniform Trade Secrets Act, anticipating that by virtue of their new positions with Pinstripe, the individual defendants will use "wrongfully misappropriated Kelly's (sic) confidential information and trade secrets"; Count III alleges tortious interference with the contract between Kelly and its former employees against defendant Pinstripe; and Count IV alleges a claim of breach of fiduciary duty owed to Kelly against the individual defendants. On the day plaintiff filed its complaint, it also filed its motion for TRO and preliminary injunction.

Plaintiff's motion for a TRO requests that the court enjoin defendants Lubin and Stamm from working as an "owner, director, agent, [or] consultant" of a Kelly competitor in the Milwaukee, Wisconsin, Troy, Michigan, or area serviced by HRFirst for a period of one year, and similarly requests that the court enjoin defendant Pinstripe from employing the individual defendants for a period of one year. The plaintiff also requests that the court enjoin the individual defendants from "soliciting any Kelly customers or employees for a competing business purpose for a period of one year," and requests

BACKGROUND

This case stems from the departure of employees Douglas Lubin and Anne Stamm from plaintiff Kelly Services, Inc. ("Kelly"), specifically its business line called "HRFirst Services ("HRFirst")," and their subsequent employment with defendant Pinstripe, Inc., which plaintiff alleges is a Kelly competitor located in Milwaukee, Wisconsin.

Kelly asserts four counts in its complaint. In Count I, Kelly claims breach of contract against its former employees for violation of non-competition agreements; Count II asserts violations of the Michigan Uniform Trade Secrets Act, anticipating that by virtue of their new positions with Pinstripe, the individual defendants will use "wrongfully misappropriated Kelly's (sic) confidential information and trade secrets"; Count III alleges tortious interference with the contract between Kelly and its former employees against defendant Pinstripe; and Count IV alleges a claim of breach of fiduciary duty owed to Kelly against the individual defendants. On the day plaintiff filed its complaint, it also filed its motion for TRO and preliminary injunction.

Plaintiff's motion for a TRO requests that the court enjoin defendants Lubin and Stamm from working as an "owner, director, agent, [or] consultant" of a Kelly competitor in the Milwaukee, Wisconsin, Troy, Michigan, or area serviced by HRFirst for a period of one year, and similarly requests that the court enjoin defendant Pinstripe from employing the individual defendants for a period of one year. The plaintiff also requests that the court enjoin the individual defendants from "soliciting any Kelly customers or employees for a competing business purpose for a period of one year," and requests

that the court enjoin all defendants from using Kelly confidential information. Finally, plaintiff requests that the court require the individual defendants to "immediately return to Kelly all originals, copies or other reproductions of Kelly's confidential and trade secret information."

STANDARD

The Court is authorized to issue TROs and/or Preliminary Injunctions pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff has the burden of establishing that "immediate and irreparable injury, loss, or damage will result" in order for the Court to grant a TRO. Fed.R.Civ.P. 65(b)(1).

In determining whether to issue or withhold an injunction or TRO, courts commonly balance the following factors: (1) whether the party seeking the injunction has shown a substantial likelihood of success on the merits; (2) whether the party seeking the injunction will suffer irreparable harm absent the injunction; (3) whether an injunction will cause others to suffer substantial harm; and (4) whether the public interest would be served by the preliminary injunction. Memphis Planned Parenthood, Inc. v. Sundquist, 175 F.3d 456, 460 (6th Cir.1999); Southern Milk Sales, Inc. v. Martin, 924 F.2d 98, 103 n. 3 (6th Cir.1991).

DISCUSSION

1) Plaintiff's Motion for Temporary Restraining Order

The pertinent sections of the "Agreement with Full Time Employees of Kelly Corporation" ("Agreement"), signed by both Lubin and Stamm, which Kelly asserts governs this dispute, are as follows:

*****

that the court enjoin all defendants from using Kelly confidential information. Finally, plaintiff requests that the court require the individual defendants to "immediately return to Kelly all originals, copies or other reproductions of Kelly's confidential and trade secret information."

## STANDARD

The Court is authorized to issue TROs and/or Preliminary Injunctions pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff has the burden of establishing that "immediate and irreparable injury, loss, or damage will result" in order for the Court to grant a TRO. Fed.R.Civ.P. 65(b)(1).

In determining whether to issue or withhold an injunction or TRO, courts commonly balance the following factors: (1) whether the party seeking the injunction has shown a substantial likelihood of success on the merits; (2) whether the party seeking the injunction will suffer irreparable harm absent the injunction; (3) whether an injunction will cause others to suffer substantial harm; and (4) whether the public interest would be served by the preliminary injunction. Memphis Planned Parenthood, Inc. v. Sundquist, 175 F.3d 456, 460 (6th Cir.1999); Southern Milk Sales, Inc. v. Martin, 924 F.2d 98, 103 n. 3 (6th Cir.1991).

## DISCUSSION

1) Plaintiff's Motion for Temporary Restraining Order

The pertinent sections of the "Agreement with Full Time Employees of Kelly Corporation" ("Agreement"), signed by both Lubin and Stamm, which Kelly asserts governs this dispute, are as follows:

\*\*\*\*\*

3

> In consideration of my employment with Kelly Services, Inc., Kelly Assisted Living Services, Inc., or any other Kelly corporation ("Kelly"), I agree as follows:
>
> (1) Unless required by my job at Kelly, I will never disclose, use, copy, or retain any confidential business information or trade secrets belonging to Kelly, Kelly's customers, or Kelly's suppliers. This includes customer and employee lists; sales, service, recruiting and training techniques and manuals; sales and marketing strategies; computer programs; financial data and other similar information.
>
> (2) While I am working for Kelly, I will not solicit any of Kelly's customers or employees for a competing business, and I will not compete against Kelly or associate myself with any Kelly competitor as an employee, owner, partner, stockholder, investor, agent, or consultant. These same limitations apply for one year after I leave Kelly in any market area in which I worked or had responsibility during the past five years of my employment with Kelly.

*****

Exhibit 1 to Plaintiff's Complaint. It is not disputed that both Lubin and Stamm signed an agreement containing these provisions upon their employment with Kelly. Kelly asserts that these provisions of the Agreement are clearly violated by the defendants' activities with Pinstripe.

Defendants' response to plaintiff's motion generally denies that plaintiff is entitled to injunctive relief, and points to an agreement entered into between Kelly and Pinstripe in February, 2005 (the "Settlement Agreement"), which resolved the prior companion case in this court as well as another related lawsuit then pending in the United States District Court for the District of Wisconsin. The provisions of the Settlement Agreement Pinstripe relies on for its defense state:

> III. <u>No Hire</u>
>
> A. Pinstripe and its directors, officers, agents and employees, including but not limited to Marks, Diamond and Nimke, shall

4

> In consideration of my employment with Kelly Services, Inc., Kelly Assisted Living Services, Inc., or any other Kelly corporation ("Kelly"), I agree as follows:
>
> (1) Unless required by my job at Kelly, I will never disclose, use, copy, or retain any confidential business information or trade secrets belonging to Kelly, Kelly's customers, or Kelly's suppliers. This includes customer and employee lists; sales, service, recruiting and training techniques and manuals; sales and marketing strategies; computer programs; financial data and other similar information.
>
> (2) While I am working for Kelly, I will not solicit any of Kelly's customers or employees for a competing business, and I will not compete against Kelly or associate myself with any Kelly competitor as an employee, owner, partner, stockholder, investor, agent, or consultant. These same limitations apply for one year after I leave Kelly in any market area in which I worked or had responsibility during the past five years of my employment with Kelly.

*****

Exhibit 1 to Plaintiff's Complaint. It is not disputed that both Lubin and Stamm signed an agreement containing these provisions upon their employment with Kelly. Kelly asserts that these provisions of the Agreement are clearly violated by the defendants' activities with Pinstripe.

Defendants' response to plaintiff's motion generally denies that plaintiff is entitled to injunctive relief, and points to an agreement entered into between Kelly and Pinstripe in February, 2005 (the "Settlement Agreement"), which resolved the prior companion case in this court as well as another related lawsuit then pending in the United States District Court for the District of Wisconsin. The provisions of the Settlement Agreement Pinstripe relies on for its defense state:

> III.  <u>No Hire</u>
>
> A. Pinstripe and its directors, officers, agents and employees, including but not limited to Marks, Diamond and Nimke, shall

4

    not hire any current or former Kelly employee(s) for a one (1) year period ending February 18, 2006.

  B. The parties acknowledge and agree that "former Kelly employee(s)" means any person(s) employed by Kelly at any time during the 12 months preceding the date of hire by Pinstripe, provided such person was employed by Kelly as of the Effective Date of this Agreement.  However, this restriction shall not apply to Kelly employees who were employed strictly as temporary or leased employees.

  C. The Parties (sic) acknowledge and agree that Kelly will not proceed against Pinstripe or any of its directors, officers, agents or employees, including but not limited to Marks, Diamond and Nimke, for interference with the employment of a Kelly employee, nor against such Kelly employee for breach of his or her employment agreement with Kelly, so long as Pinstripe, its directors officers, (sic) agents and employees, and such Kelly employee are in compliance with this Section III.  This limitation shall not be construed to limit, waive or otherwise impact upon any right or remedy that Kelly may now or hereafter have as against any Kelly employee and/or Pinstripe or any of its directors, officers, agents or employees other than as specifically set forth in this Section III.C.

Agreement, pp. 2-3.

  Defendants contend that in the Settlement Agreement, Kelly waived claims against Pinstripe stemming from any hiring of Kelly employees by Pinstripe after the date of February 18, 2006, as well as claims against those employees for breach of employment contracts, and that Pinstripe was explicitly permitted to hire Lubin and Stamm pursuant to the Settlement Agreement.  Defendants further deny the misappropriation of any Kelly trade secrets or confidential information.

  Plaintiff filed a "Supplemental Brief in Support of its Motion for a Temporary Restraining Order and a Preliminary Injunction" on March 17, 2006, in which Kelly makes the argument that Section III of the Settlement Agreement was not a wholesale,

          not hire any current or former Kelly employee(s) for a one (1) year period ending February 18, 2006.

B.     The parties acknowledge and agree that "former Kelly employee(s)" means any person(s) employed by Kelly at any time during the 12 months preceding the date of hire by Pinstripe, provided such person was employed by Kelly as of the Effective Date of this Agreement. However, this restriction shall not apply to Kelly employees who were employed strictly as temporary or leased employees.

C.     The Parties (sic) acknowledge and agree that Kelly will not proceed against Pinstripe or any of its directors, officers, agents or employees, including but not limited to Marks, Diamond and Nimke, for interference with the employment of a Kelly employee, nor against such Kelly employee for breach of his or her employment agreement with Kelly, so long as Pinstripe, its directors officers, (sic) agents and employees, and such Kelly employee are in compliance with this Section III. This limitation shall not be construed to limit, waive or otherwise impact upon any right or remedy that Kelly may now or hereafter have as against any Kelly employee and/or Pinstripe or any of its directors, officers, agents or employees other than as specifically set forth in this Section III.C.

Agreement, pp. 2-3.

      Defendants contend that in the Settlement Agreement, Kelly waived claims against Pinstripe stemming from any hiring of Kelly employees by Pinstripe after the date of February 18, 2006, as well as claims against those employees for breach of employment contracts, and that Pinstripe was explicitly permitted to hire Lubin and Stamm pursuant to the Settlement Agreement. Defendants further deny the misappropriation of any Kelly trade secrets or confidential information.

      Plaintiff filed a "Supplemental Brief in Support of its Motion for a Temporary Restraining Order and a Preliminary Injunction" on March 17, 2006, in which Kelly makes the argument that Section III of the Settlement Agreement was not a wholesale,

unending waiver of Kelly's right to sue for interference by Pinstripe or for breach of employees' employment agreements, but rather is very specific and concerns only the hiring of temporary or leased employees by Pinstripe. Kelly argues that this is made clear by the exemption of temporary or leased employees in Section III(B). However, the court notes, Kelly does not provide the court with any argument about any restrictions on temporary and leased employees' prospective employment with competitors. For this reason, the court has no context in which to consider Kelly's argument.

The court has carefully examined the documents in question and the parties' arguments concerning those documents, and finds entry of a temporary restraining order would be improper. The plain language of Section III of the Settlement Agreement, which was entered into after the Lubin and Stamm Agreements with Kelly, states that Pinstripe cannot hire "current or former" Kelly employees for a period of one year. Then, the Settlement Agreement goes on to exclude "temporary or leased employees" from its restrictions. Next, Kelly generally waives claims of the nature brought in this litigation against Pinstripe (and directors, officers, agents and employees) and against Kelly employees, "so long as [they] are in compliance with this Section III." Then, finally, the Settlement Agreement states that it does not limit or waive any of Kelly's claims against any Kelly employee or Pinstripe or Pinstripe representative or employee "other than as specifically set forth in this Section III.C." Settlement Agreement, pp. 2-3.

The court notes that the terms of the Settlement Agreement appear to have changed the status quo via Pinstripe's agreement not to hire "former" Kelly employees

6

unending waiver of Kelly's right to sue for interference by Pinstripe or for breach of employees' employment agreements, but rather is very specific and concerns only the hiring of temporary or leased employees by Pinstripe. Kelly argues that this is made clear by the exemption of temporary or leased employees in Section III(B). However, the court notes, Kelly does not provide the court with any argument about any restrictions on temporary and leased employees' prospective employment with competitors. For this reason, the court has no context in which to consider Kelly's argument.

The court has carefully examined the documents in question and the parties' arguments concerning those documents, and finds entry of a temporary restraining order would be improper. The plain language of Section III of the Settlement Agreement, which was entered into after the Lubin and Stamm Agreements with Kelly, states that Pinstripe cannot hire "current or former" Kelly employees for a period of one year. Then, the Settlement Agreement goes on to exclude "temporary or leased employees" from its restrictions. Next, Kelly generally waives claims of the nature brought in this litigation against Pinstripe (and directors, officers, agents and employees) and against Kelly employees, "so long as [they] are in compliance with this Section III." Then, finally, the Settlement Agreement states that it does not limit or waive any of Kelly's claims against any Kelly employee or Pinstripe or Pinstripe representative or employee "other than as specifically set forth in this Section III.C." Settlement Agreement, pp. 2-3.

The court notes that the terms of the Settlement Agreement appear to have changed the status quo via Pinstripe's agreement not to hire "former" Kelly employees

6

for one year.  This appears to have been a concession on the part of Pinstripe, in that the Kelly employment Agreement restricted Kelly employees from hiring on with a competitor for only one year after termination from Kelly's employment.  Additionally, a provision in Section IV requires Marks and Diamond (the former Kelly employees who were the impetus for the Settlement Agreement) and then Pinstripe to keep Kelly confidential information confidential for a period of two years, whereas the Kelly employment Agreement contains no cutoff date on non-disclosure of Kelly confidential/proprietary information.  Section IV(A)(2)(b) specifically states that Pinstripe shall "[r]equire any Kelly employee hired pursuant to Section III hereof to preserve and keep confidential any and all propriety (sic) and/or confidential information of Kelly for a period of 2 years from the date that such person becomes employed by Pinstripe or any affiliate, subsidiary or division thereof."  This appears to be a major concession on the part of Kelly.

     For these reasons, when the court construes the Settlement Agreement "as a whole," giving "harmonious effect to each word and phrase," as requested by plaintiff, citing <u>Florida Canada Corp. V. Union Carbide & Carbon Corp.</u>, 280 F.2d 193, 195-96 (6th Cir. 1960), it appears possible that Kelly has waived the right to bring claims against Pinstripe and/or former Kelly employees when such employees leave Kelly to move to Pinstripe.  The court has considered the argument made by Kelly, that the Settlement Agreement, to which Lubin and Stamm were not parties, could not on the part of Kelly unilaterally change or waive its rights derived from the existing bilateral employment Agreements.  Kelly cites to the Michigan Supreme Court case of <u>Quality Products and Concepts Co. v. Nagel Precision, Inc.</u>, 469 Mich. 362 (2003) for this proposition.

for one year. This appears to have been a concession on the part of Pinstripe, in that the Kelly employment Agreement restricted Kelly employees from hiring on with a competitor for only one year after termination from Kelly's employment. Additionally, a provision in Section IV requires Marks and Diamond (the former Kelly employees who were the impetus for the Settlement Agreement) and then Pinstripe to keep Kelly confidential information confidential for a period of two years, whereas the Kelly employment Agreement contains no cutoff date on non-disclosure of Kelly confidential/proprietary information. Section IV(A)(2)(b) specifically states that Pinstripe shall "[r]equire any Kelly employee hired pursuant to Section III hereof to preserve and keep confidential any and all propriety (sic) and/or confidential information of Kelly for a period of 2 years from the date that such person becomes employed by Pinstripe or any affiliate, subsidiary or division thereof." This appears to be a major concession on the part of Kelly.

 For these reasons, when the court construes the Settlement Agreement "as a whole," giving "harmonious effect to each word and phrase," as requested by plaintiff, citing Florida Canada Corp. V. Union Carbide & Carbon Corp., 280 F.2d 193, 195-96 (6th Cir. 1960), it appears possible that Kelly has waived the right to bring claims against Pinstripe and/or former Kelly employees when such employees leave Kelly to move to Pinstripe. The court has considered the argument made by Kelly, that the Settlement Agreement, to which Lubin and Stamm were not parties, could not on the part of Kelly unilaterally change or waive its rights derived from the existing bilateral employment Agreements. Kelly cites to the Michigan Supreme Court case of Quality Products and Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362 (2003) for this proposition.

7

However, the court is not convinced that a party cannot unilaterally change a contract to the benefit of the *other party*(ies), as would be the case here.  As noted in the more recent Michigan Supreme Court case of Burton v. Reed City Hospital Corporation, 471 Mich. 745 (2005), citing Klas v. Pearce and Hardware and Furniture Co., 202 Mich. 334, (1918), "[w]e agree that a waiver sometimes "may be shown by a course of acts and conduct, and in some cases will be implied therefrom." Klas, 202 Mich. 339.

As it relates to the remaining claims, it is apparent that factual development through discovery is necessary in order to evaluate the potential merits of that claim, especially in light of the competing declarations submitted by the parties.

For these reasons, the court is not convinced that Kelly has yet demonstrated a strong likelihood of success on the merits, which it would require to grant Kelly's motion for a temporary restraining order.  Accordingly, the court will deny that portion of Kelly's motion requesting a TRO.  Kelly's motion concerning discovery prior to a preliminary injunction hearing is addressed below.

2) Plaintiff's Motion for an Order Granting Leave to Take Expedited Discovery

The court has considered this motion filed by plaintiff Kelly Services, Inc., which requests the taking of expedited written discovery and depositions.  The court does not require a response by defendants nor a hearing on this motion for its determination.

The court will grant the motion in part, by allowing for immediate service of interrogatories and for scheduling depositions prior to the filing of answers and the Rule 16 conference.  However, the motion will be denied as to the request for earlier deadlines for responses to document requests, and the parties are ordered to comply with applicable rules for those due dates.

However, the court is not convinced that a party cannot unilaterally change a contract to the benefit of the *other party*(ies), as would be the case here.  As noted in the more recent Michigan Supreme Court case of Burton v. Reed City Hospital Corporation, 471 Mich. 745 (2005), citing Klas v. Pearce and Hardware and Furniture Co., 202 Mich. 334, (1918), "[w]e agree that a waiver sometimes "may be shown by a course of acts and conduct, and in some cases will be implied therefrom." Klas, 202 Mich. 339.

As it relates to the remaining claims, it is apparent that factual development through discovery is necessary in order to evaluate the potential merits of that claim, especially in light of the competing declarations submitted by the parties.

For these reasons, the court is not convinced that Kelly has yet demonstrated a strong likelihood of success on the merits, which it would require to grant Kelly's motion for a temporary restraining order.  Accordingly, the court will deny that portion of Kelly's motion requesting a TRO.  Kelly's motion concerning discovery prior to a preliminary injunction hearing is addressed below.

2) Plaintiff's Motion for an Order Granting Leave to Take Expedited Discovery

The court has considered this motion filed by plaintiff Kelly Services, Inc., which requests the taking of expedited written discovery and depositions.  The court does not require a response by defendants nor a hearing on this motion for its determination.

The court will grant the motion in part, by allowing for immediate service of interrogatories and for scheduling depositions prior to the filing of answers and the Rule 16 conference.  However, the motion will be denied as to the request for earlier deadlines for responses to document requests, and the parties are ordered to comply with applicable rules for those due dates.

CONCLUSION

For the reasons given above, plaintiff's motion for a temporary restraining order is hereby DENIED.  Plaintiff's motion for an order granting leave to take expedited discovery is hereby GRANTED IN PART AND DENIED IN PART as stated above.  A scheduling/status conference is scheduled for Tuesday, April 11, 2006 at 9:30 a.m., for scheduling of the motion for preliminary injunction and other litigation dates and deadlines.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 29, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk

CONCLUSION

For the reasons given above, plaintiff's motion for a temporary restraining order is hereby DENIED.  Plaintiff's motion for an order granting leave to take expedited discovery is hereby GRANTED IN PART AND DENIED IN PART as stated above.  A scheduling/status conference is scheduled for Tuesday, April 11, 2006 at 9:30 a.m., for scheduling of the motion for preliminary injunction and other litigation dates and deadlines.

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 29, 2006, by electronic and/or ordinary mail.

S/Josephine Chaffee
Secretary/Deputy Clerk

9