UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY SERVICES, INC., a Delaware
corporation,

        Plaintiff,

                              Case No. 06-CV-10801

vs.                                HON. GEORGE CARAM STEEH

PINSTRIPE, INC., a Wisconsin
corporation, DOUGLAS E. LUBIN, an
individual, and ANNE STAMM,
an individual,

        Defendants.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DOC. #5)

INTRODUCTION

This case was filed following the departure of two Kelly employees for employment with a Wisconsin competitor, defendant Pinstripe, Inc. Before the court is plaintiff's motion for preliminary injunction. This court held oral argument on plaintiff's motion for preliminary injunction on August 21, 2006. At that time, the court indicated a likelihood that it would deny plaintiff's motion. After again considering the parties' arguments, both oral and written, and the post-hearing briefing submitted by the parties, the court remains convinced that the motion should be denied.

BACKGROUND

This case was filed in early 2006 following the departure of employees Douglas Lubin and Anne Stamm from plaintiff Kelly Services, Inc. ("Kelly"). Lubin and Stamm

were sales representatives for a small Kelly division/business line called "HRFirst Services ("HRFirst")," who left Kelly for employment at competitor Pinstripe, Inc., a Milwaukee, Wisconsin competitor founded by another former Kelly employee, Susan Marks.

Susan Marks came to Kelly in 2000, when she sold to Kelly her Wisconsin temporary staffing services company, called Prostaff. That business became HRFirst Services under Kelly control. Pursuant to an employment agreement Marks signed with Kelly, she first served as a Kelly officer, specifically vice president of E-business. Marks left Kelly in 2004, and founded defendant Pinstripe. In subsequent months, additional Kelly employees, some of whom were former Prostaff personnel, left Kelly to join Pinstripe, including Barry Diamond, the HRFirst sales team leader. Kelly sued Pinstripe, Marks, and Diamond in February 2005, asserting claims similar to those brought in this litigation. Kelly, Pinstripe, and the individual defendants ultimately entered into a settlement agreement with an effective date of February 18, 2005, in resolution of the lawsuit. In that agreement, Pinstripe agreed not to hire certain Kelly employees for a year, and Kelly agreed not to sue Pinstripe "or any of its directors, officers, agents or employees, for interference with the employment of a Kelly employee, nor against such Kelly employee for breach of his or her employment agreement with Kelly, so long as Pinstripe, its directors officers, (sic) agents and employees, and such Kelly employee are in compliance with this Section III...."

The instant litigation began approximately one year after the effective date of the above-referenced settlement agreement, when Pinstripe hired Lubin and Stamm, who plaintiff asserts were the "entire sales force of HRFirst," to perform jobs plaintiff

contends are "substantially the same sales position that they held at Kelly." In its complaint, Kelly first claims breach of contract against Lubin and Stamm for violation of non-competition agreements they entered into with Kelly (Count I); next asserts violations of the Michigan Uniform Trade Secrets Act, anticipating that by virtue of their new positions with Pinstripe, the individual defendants will use "wrongfully misappropriated Kelly's (sic) confidential information and trade secrets" (Count II); alleges tortious interference with the contract between Kelly and its former employees against defendant Pinstripe (Count III); and lastly alleges a claim of breach of fiduciary duty owed to Kelly against the individual defendants (Count IV).  On the day plaintiff filed its complaint, it also filed its motion for TRO and preliminary injunction.  The court denied plaintiff's motion for TRO on March 29, 2006, when it also granted in part and denied in part plaintiff's motion for an order granting leave to take expedited discovery.

Kelly's request for preliminary injunction asks the court to enjoin Lubin and Stamm from working for Pinstripe and any other competitor of Kelly "within any area encompassed by HRFirst's line of business nationwide for a period of one year from the date of this order;" to enjoin Pinstripe from employing Lubin and Stamm within such area for the same period; to enjoin and restrain Lubin and Stamm from "soliciting any Kelly customers or employees for a competing business purpose for a period of one year from the date of this order;" and to enjoin and restrain defendants from keeping, using, or disclosing Kelly confidential and trade secret information.

The court entertained oral argument on this request on August 21, 2006, following several adjournments of the hearing date, and allowed the filing of limited

briefing following the hearing. The court's consideration of the arguments presented, and its determination on the matter, is set forth below.

## STANDARD

In seeking a preliminary injunction, the plaintiff has the burden of establishing that "immediate and irreparable injury, loss, or damage will result" in order for the Court to grant a TRO. Fed.R.Civ.P. 65(b)(1).

Courts commonly balance the following factors in determining whether to issue or withhold an injunction or TRO: (1) whether the party seeking the injunction has shown a substantial likelihood of success on the merits; (2) whether the party seeking the injunction will suffer irreparable harm absent the injunction; (3) whether an injunction will cause others to suffer substantial harm; and (4) whether the public interest would be served by the preliminary injunction. Memphis Planned Parenthood, Inc. v. Sundquist, 175 F.3d 456, 460 (6th Cir.1999); Southern Milk Sales, Inc. v. Martin, 924 F.2d 98, 103 n. 3 (6th Cir.1991). The decision to grant or deny a request for preliminary injunction lies within the discretion of the district court. CSX Transp. Inc. v. Tennessee State Bd. of Equalization, 964 F.2d 548, 552 (6th Cir. 1992).

## DISCUSSION

### Counts I and III

The court will address plaintiff's request for injunction as to its first and third counts together, as each is based on the alleged breach of (or tortious interference with) Lubin's and Stamm's employment agreements with Kelly via their employment with defendant.

Defendants Lubin and Stamm both signed agreements containing proprietary information and non-competition provisions when they began work with Kelly Services. Pertinent provisions of that agreement state:

> In consideration of my employment with Kelly Services, Inc., Kelly Assisted Living Services, Inc., or any other Kelly corporation ("Kelly"), I agree as follows:
>
> (1) Unless required by my job at Kelly, I will never disclose, use, copy, or retain any confidential business information or trade secrets belonging to Kelly, Kelly's customers, or Kelly's suppliers. This includes customer and employee lists; sales, service, recruiting and training techniques and manuals; sales and marketing strategies; computer programs; financial data and other similar information.
>
> (2) While I am working for Kelly, I will not solicit any of Kelly's customers or employees for a competing business, and I will not compete against Kelly or associate myself with any Kelly competitor as an employee, owner, partner, stockholder, investor, agent, or consultant. These same limitations apply for one year after I leave Kelly in any market area in which I worked or had responsibility during the past five years of my employment with Kelly.

*****

Kelly's first claim asserts that these provisions are violated by the defendants' activities with Pinstripe, and its third claim asserts that Pinstripe tortiously interfered with those agreements. Furthermore, plaintiff asserts that the settlement agreement is no defense to this action, as it merely *limited Kelly's rights*, and was *not a grant of rights* to Pinstripe or the individual defendants to begin an employment relationship in violation of the individual defendants' agreements with Kelly. The "no hire" section of that agreement states:

> A. Pinstripe and its directors, officers, agents and employees, including but not limited to Marks, Diamond, and Nimke, shall not hire any current or former Kelly employee(s) for a one (1) year period ending February 18, 2006.

5

B.  The parties acknowledge and agree that "former Kelly employee(s) means any person(s) employed by Kelly at any time during the 12 months preceding the date of hire by Pinstripe, provided such person was employed by Kelly as of the Effective Date of this Agreement.  However, this restriction shall not apply to Kelly employees who were employed strictly as temporary or leased employees.

C.  The Parties acknowledge and agree that Kelly will not proceed against Pinstripe or any of its directors, officers, agents, or employees, including but not limited to Marks, Diamond and Nimke, for interference with the employment of a Kelly employee, nor against such Kelly employee for breach of his or her employment agreement with Kelly, so long as Pinstripe, its directors[,] officers, agents and employees, and such Kelly employee are in compliance with this Section III.  This limitation shall not be construed to limit, waive or otherwise impact upon any right or remedy that Kelly may now or hereafter have as against and Kelly employee and/or Pinstripe or any of its directors, officers, agents, or employees other than as specifically set forth in this Section III.C.

Settlement and Release Agreement, § III.

      For the reasons stated in its oral decision on the motion for TRO, as well as those added below, the court cannot determine that Kelly has demonstrated a likelihood of success on these claims.  Specifically, the court notes that section III(A) of the settlement agreement states it applies to "*current or former* Kelly employees," which means the agreement would not apply to any employees hired by Kelly after the effective date of the agreement.  Significantly, HRFirst has been described as a small division of Kelly, and Kelly has complained that Pinstripe has gutted its (HRFirst's) "entire sales force."  Thus, at the time the settlement agreement was executed, it appears to the court that there were not many remaining HRFirst staff members, and therefore the year's "stand down" might have given Kelly the ability to grow that business with those staff members remaining, adding personnel to HRFirst to whom the terms of the settlement agreement would not apply.  In any event, the agreement did not provide a blanket waiver to Pinstripe, but was a narrower release of rights by Kelly.

Further, concerning plaintiff's argument that the agreement was not intended to "grant" rights to Pinstripe, the court notes that plaintiff's own preliminary injunction brief states that "[a]dditionally, under Section IIIB, Pinstripe was entitled to hire, during the one year no hire period, a former Kelly employee who was not employed by Kelly as of the effective date of the Settlement Agreement." Plaintiff's Brief, p. 29, citing Ex. 141, Marks Dep Tr at 192. This interpretation of the agreement apparently grants Pinstripe the right to hire a former Kelly employee, so long as the Kelly employee was not employed by Kelly as of the date of the agreement, regardless of the former Kelly employee's agreement with Kelly concerning non-competition. Notably, this "grant of rights" to Pinstripe is not explicitly stated in the agreement, yet is acknowledged by Kelly, and therefore further undermines the opposing interpretation advanced by Kelly. A preliminary injunction will not be granted as to these claims.

Counts II and IV

In these counts, plaintiff asserts violations of the Michigan Uniform Trade Secrets Act, anticipating that the individual defendants will use "wrongfully misappropriated Kelly's (sic) confidential information and trade secrets" (Count II), and a claim of breach of fiduciary duty owed to Kelly against the individual defendants (Count IV).[1] The court noted at oral argument that, although defendant contends it rightfully employed the individual defendants, pursuant to the settlement agreement, it has acknowledged that

---

[1] Defendant argues that Count IV is preempted by plaintiff's claim brought under the Michigan Uniform Trade Secrets Act, or that alternatively, there is no fiduciary duty owed to Kelly by the individual defendants. That argument is not before the court. In any event, because either claim would require plaintiff to establish disclosure (inevitable or not) of misappropriated information, the court will address these claims together.

7

plaintiff did not likewise "give up the right to sue for a breach of the agreement in relation to the duty of the employees and the duty of Pinstripe to avoid misappropriating its trade secrets under the statute or as defined in the employment agreement themselves."  Transcript of hearing, p. 93.

Although plaintiff has made significant proffers of evidence in support of these claims, after a review of the parties' pre- and post- argument briefings and proffers, the court is left unconvinced that the plaintiff has met its burden of establishing immediate and irreparable injury, loss, or damage, required for entry of injunctive relief.

It is not disputed by plaintiff that a claim for misappropriation of a trade secret under the theory of inevitable disclosure requires the plaintiff to establish that the former employee possesses its trade secrets and "will inevitably disclose such trade secrets." Defendant cites to United Rentals, Inc. v. Keizer, 202 F.Supp. 2d 727, 742 (W.D. Mich. 2002) for this proposition.  Likewise, in plaintiff's claim for breach of fiduciary duty, plaintiff asserts that Lubin and Stamm have the "duty to refrain from disclosing or exploiting Kelly's confidential and proprietary information and trade secrets for their own benefit or the benefit of their new employer..." and that they "inevitably will breach these duties by misappropriating and disclosing confidential and proprietary information...." Complaint, ¶¶ 58-59.  Plaintiff has offered some evidence to support possession of trade secrets by the individual defendants.  Plaintiff has also pointed to certain evidence adduced at the hearing to argue the inevitability of disclosure of HRFirst information. For instance, plaintiff presented the court with an email authored by defendant Lubin while working for defendant, dated June 13, 2006, discusses work Lubin did for HRFirst, which arguably contained proprietary information.  Plaintiff also presented some

compelling evidence that Lubin unnecessarily accessed HRFirst files after his departure from employment there. Additional evidence and arguments were offered in support of both parties' contentions.

Regardless of the strength or weakness of plaintiff's position at this juncture vis a vis these claims, plaintiff has conceded that it has lost no customers to date, many months into the litigation, although it contends that customer "relationships" have been damaged due to defendants' actions. Furthermore, it is not contested that defendant Stamm has changed jobs at Pinstripe, where she is no longer a salesperson but now serves as a "Client Solutions Manager," coordinating the servicing of particular customers' needs. These facts weigh against according the equitable relief demanded by plaintiff.

Because the court cannot find, given the state of the proceedings to date, that plaintiff has established a substantial likelihood of success on the merits, and because plaintiff has not shown the court that damages would not serve to compensate the plaintiff, if indeed plaintiff succeeded on some of its claims, as well as because irreparable harm has not been demonstrated to a degree necessary for a preliminary injunction to issue, plaintiff's request for injunctive relief will not be granted.

CONCLUSION

For the reasons stated above, the plaintiff's motion for preliminary injunction is hereby DENIED.

IT IS SO ORDERED.

Dated: September 27, 2006

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 27, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---